GORDON McCLOUD, J.
 

 ¶1 The trial court found that Oscar Lopez's lawyer was "fairly obvious[ly]" "severely handicapped" by depression during the pretrial and trial phases of Lopez's case.
 
 [1]
 
 That finding was supported by the trial court's own observations of defense counsel's performance-and sometimes failure to show up-at trial. That finding was also supported by declarations and testimony presented at the hearing on Lopez's motion for a new trial. That evidence revealed that defense counsel could not perform basic tasks, such as showing up to meetings with his investigator to prepare Lopez's defense, submitting routine paperwork to obtain public funding so his investigator could complete her pretrial investigation, and calling his investigator back to learn about her "important" findings.
 
 [2]
 
 Based on that evidence, the trial court concluded that Lopez was denied his constitutional right to effective assistance of counsel and granted Lopez's motion for a new trial. See U.S. CONST . amend. VI ; WASH. CONST. art. I, § 22. We agree with the trial court. We therefore reverse the Court of Appeals' decision to reverse the trial court.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 ¶2 Lopez was employed as a bus driver by an after-hours day care center. He drove children from the day care center to school in the morning, and then back again in the afternoon after school. 9 VRP (Mar. 11, 2015) at 1076, 1085. One of those children was six-and-a-half-year-old L.M. Def. Ex. 18 (Tr. of Interview of L.M.) at 2. Sometimes, due to the children's schedules and the location of their schools, Lopez would be alone with L.M. on the bus. 6 VRP (Mar. 4, 2015) at 498-509.
 

 ¶3 On June 6, 2014, L.M. reported to her mother that Lopez had " 'touched [her] butt yesterday' " morning before school when she was alone with him on the bus. 7 VRP (Mar. 5, 2015) at 663. When questioned further about that touching, L.M. explained that Lopez had "itch[ed]" and "tickl[ed]" her vagina in a way that felt as though he was "trying to pinch [her]." Def. Ex. 18, at 13. L.M.'s mother contacted the police, and the State charged Lopez with first degree child molestation. CP at 77.
 

 ¶4 Lopez denied L.M.'s allegation of child molestation. Attorney Steven Witchley represented him, and the case proceeded to a jury trial. Lopez's defense theory was that L.M.'s claim was not believable. 10 VRP (Mar. 12, 2015) at 1198. To credit L.M.'s version, Witchley explained, the jury would have to believe four unbelievable things: (1) that Lopez, a family man, molested L.M.; (2) that the molestation occurred sometime between January and June 2014, but not "yesterday" morning before school as L.M. reported because the bus logs proved that Lopez was never alone with L.M. that morning; (3) that L.M. waited weeks or months before reporting the incident to her mother even though L.M. testified that she reported the incident immediately; and finally (4) that Lopez would be brazen enough to touch L.M. like that in public in the day care center's busy parking lot.
 
 Id.
 
 at 1185-97.
 

 ¶5 The jury apparently believed L.M. and convicted Lopez of first degree child molestation. CP at 81.
 

 ¶6 After the verdict but before sentencing, Lopez fired Witchley and hired a new attorney. The new attorney filed a motion for a new trial based on ineffective assistance of counsel.
 
 Id.
 
 at 292-97. To prevail on a claim of ineffective assistance of counsel, a defendant must generally show that counsel performed deficiently and that the deficient performance caused prejudice.
 
 [3]
 
 Lopez argued that he did not have to prove deficient performance or prejudice because severe mental depression coupled with contemporaneous or nearly contemporaneous disbarment
 
 [4]
 
 constitutes ineffective assistance of counsel per se.
 
 Id.
 
 at 294 (quoting
 
 In re Pers. Restraint of Brett,
 

 142 Wash.2d 868
 
 , 883-85,
 
 16 P.3d 601
 
 (2001) (Talmadge, J., concurring) ). Alternatively, Lopez identified Witchley's performance, including his failure to adequately investigate,
 
 id.
 
 at 121-24,
 
 16 P.3d 601
 
 , and failure to call certain witnesses that Lopez had identified,
 
 id.
 
 at 295-96,
 
 16 P.3d 601
 
 , as grounds for ineffective assistance.
 
 [5]
 

 ¶7 It is undisputed that while Witchley was representing Lopez, Witchley was suffering from severe depression, had suicidal thoughts, 11 VRP (Oct. 8, 2015) at 1298, and struggled with just getting out of bed each day, CP at 291. Karen Sanderson, Witchley's longtime investigator, acknowledged that as Lopez's case neared trial, she observed Witchley's depression worsening under the weight of significant financial troubles, health problems, and a pending disbarment proceeding. 11 VRP (Oct. 8, 2015) at 1298; CP at 289-90.
 

 ¶8 The record supports this assessment and shows that these problems impacted his performance. Witchley failed to appear at court one day without explanation. 11 VRP (Oct. 8, 2015) at 1252. He also called in sick at the last minute on the morning of trial another day and asked to postpone trial to the afternoon. CP at 59. On the days when he did manage to show up, he was usually late.
 
 E.g.,
 
 2 VRP (Feb. 12, 2015) at 48 (10 minutes late), 3 VRP (Feb. 23, 2015) at 238 (15 to 20 minutes late). Once, he was over an hour late. 6 VRP (Mar. 4, 2015) at 521 (one hour and 20 minutes late). Witchley's inability to show up for trial alarmed the trial judge so much that he asked Lopez-either close to or in the middle of trial-if he wanted a new attorney. 11 VRP (Oct. 8, 2015) at 1252-53. At that point, Lopez declined the offer. But when Witchley continued to arrive late for trial, the trial court warned him: "[F]rankly, I'm a little baffled. We've spoken about this a number of times. You're obviously a very able trial attorney, but this continues to be an issue. So Mr. Witchley, sir, if you could - - I really want to make sure we're communicating here. ... I expect you to be on time." 3 VRP (Feb. 23, 2015) at 238-39. That warning proved inadequate, however; Witchley continued to show up late for trial. 6 VRP (Mar. 4, 2015) at 522-24. He also failed to submit briefing specifically requested by the court.
 

 Id.
 

 ¶9 Sanderson's testimony also supported this assessment of Witchley's mental health and its impact on Lopez's trial. Sanderson testified that she met with Witchley in October, several months before Lopez's trial, to create a checklist of matters that Witchley needed her to prepare for Lopez's defense. The checklist included interviewing certain employees at the day care center, locating witnesses from the children's schools to verify Lopez's whereabouts on the morning of the alleged incident, performing another site visit to the day care parking lot, and developing evidence regarding both L.M.'s penchant for lying or exaggerating
 stories and Lopez's sexual morality and decency. 11 VRP (Oct. 8, 2015) at 1289-90.
 ¶10 After that October meeting, however, Sanderson explained that Witchley "checked out." CP at 289. Witchley was routinely late and often failed to show up at case development meetings scheduled with her.
 
 Id.
 
 at 288. According to Sanderson, she and Witchley "tr[ied] to set up some times to meet to go to the scene together but he almost always cancelled at the last minute, with a different excuse every time."
 
 Id.
 
 "Every time he cancelled at the last minute he offered a new excuse" that "was always something like 'I over slept and can't make it' or 'I didn't sleep last night' or 'I'm sick.' "
 
 Id.
 
 at 288-89.
 

 ¶11 Eventually, Witchley stopped communicating with Sanderson altogether. 11 VRP (Oct. 8, 2015) at 1286. As a result, Sanderson was unable to give him important case information she discovered during her investigation. Sanderson said she left Witchley a voicemail, an e-mail, and text messages asking him to call her back so they could talk about the new information she learned during her last interview, which she believed was "important" to Lopez's case. CP at 289. But Witchley never called her back, so she never told him what that "important" information was.
 
 Id.
 
 She also did not document that "important" new information in a memo because Witchley stopped paying her to do so and refused to take the simple steps necessary to procure additional payments.
 
 Id.
 

 ¶12 In fact by December 2014, Sanderson had been working on Lopez's case for two months without payment based on Witchley's promise of eventual payment. Because Lopez was indigent, Sanderson's investigative work was paid through the Office of Public Defense (OPD).
 
 Id.
 
 at 89-90. The OPD had preauthorized $1,500 for Sanderson to develop Lopez's defense,
 
 id.
 
 at 89, but Sanderson had exceeded that amount by October 2014,
 
 id.
 
 at 289. To receive additional funding for Sanderson's investigation, Witchley had to submit a request to OPD.
 
 Id.
 
 This is a fairly routine
 process. Because Witchley repeatedly implied to Sanderson that he had submitted a request for additional funding, Sanderson continued to work on Lopez's case for an additional two months, from October to December, without payment.
 
 Id.
 
 After two months without payment and after Witchley stopped returning her calls, Sanderson had to stop work on Lopez's case.
 
 Id.
 
 "This meant that some things [they] had planned to do on the case prior to trial never took place. [Sanderson] had several reports that should have been written that were not typed up. There were interviews that never took place, as far as [Sanderson] kn[e]w. Demonstrative exhibits, prep for [Sanderson's] testimony and other tasks never happened."
 
 Id.
 
 According to Sanderson, Witchley claimed to have strategic reasons for not calling Sanderson as a witness at trial.
 
 Id.
 
 at 291. But he never claimed to have strategic reasons for failing to follow through on the work that he himself had deemed necessary in October before he became severely handicapped by illness-interviews, meet ups, exhibits, "other tasks" for trial preparation, and simple communication about the defense.
 
 Id.
 
 at 289.
 

 ¶13 OPD records show that Witchley did not submit the request for additional funding until
 
 after
 
 Lopez's trial ended.
 
 Id.
 
 at 89. In that request for additional, retroactive, funding, Witchley acknowledged that Sanderson had reminded him continuously throughout Lopez's case that he needed to secure extra OPD funding for her continued investigation and that he "simply failed to appropriately prioritize submission of [the request]" "[f]or a variety of not-very-good reasons."
 
 Id.
 
 at 92-93.
 

 ¶14 After considering all this evidence, the trial court granted Lopez's motion for a new trial due to ineffective assistance of counsel and denial of due process clause protections. 11 VRP (Oct. 30, 2015) at 1309-10, 1315-17. The trial court found, based largely on Sanderson's testimony and declaration, that it was "fairly clear that had [Witchley] not been handicapped by his depression, he would have
 been more effective,"
 
 id.
 
 at 1316, in "[his] handling of the entire case, including pretrial investigation and communications with his client,"
 
 id.
 
 at 1311. Witchley's depression, the trial court found, "fairly obvious[ly]" "severely handicapped" his representation of Lopez.
 
 Id.
 
 at 1315.
 

 ¶15 One of the failures that the trial court cited was Witchley's failure to investigate reputation evidence or call reputation witnesses. Regarding this failure, Witchley specifically
 acknowledged that "[he] did not have any tactical reasons for not calling reputation witnesses." CP at 347. That acknowledgement corresponded with Sanderson's testimony. Sanderson testified that she developed reputation evidence in other cases for Witchley before, 11 VRP (Oct. 8, 2015) at 1297, and that it was her understanding, based on her 15 plus years of experience working with Witchley, CP at 285, that it was his intent to pursue credibility evidence regarding L.M. and sexual morality reputation evidence regarding Lopez in this case, 11 VRP (Oct. 8, 2015) at 1293.
 
 [6]
 
 But Sanderson never performed this investigation because Witchley stopped paying her and stopped communicating with her. CP at 289.
 

 ¶16 The trial court found this failure particularly troubling since Witchley did not have to even search for the reputation witnesses because Lopez told him who they were, though Lopez described these witnesses' anticipated testimony in terms of character rather than reputation evidence. 11 VRP (Oct. 30, 2015) at 1309. According to the trial court, Witchley "simply failed to spot the issue."
 
 Id.
 
 Witchley, in dismissing Lopez's request that he call "certain
 
 character
 
 witnesses," "never took the additional step [in] asking whether the proposed testimony might be recast as admissible
 
 reputation
 
 testimony."
 
 Id.
 
 (emphasis added). Based on
 this evidence, on the trial court's own observations of Witchley's performance before and during trial, and on the new evidence heard and reviewed at the hearing on the motion for a new trial-including the evidence showing Witchley's failure to communicate, failure to prepare, and sometimes failure to perform at all-the trial court granted Lopez's motion for a new trial.
 

 ¶17 The Court of Appeals reversed.
 
 State v. Lopez,
 
 No. 74333-3-I, slip op. at 2,
 
 2017 WL 1050593
 
 (Wash. Ct. App. March 20, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/743333.pdf,
 
 review granted,
 

 189 Wash.2d 1001
 
 ,
 
 400 P.3d 1263
 
 (2017). It interpreted the trial court's finding of ineffective assistance of counsel as being based solely on Witchley's failure to call reputation witnesses to testify about Lopez's sexual morality and decency.
 
 Id.
 
 at 4. Because the fact that Witchley failed to call reputation witnesses was not in dispute, the issue that the Court of Appeals identified was solely a question of law, which it reviewed de novo.
 
 See
 

 id.
 
 at 4-6. On that purely legal question, the Court of Appeals held that Witchley's failure to investigate and present sexual morality and decency evidence could not be classified as deficient performance because such evidence is not admissible under a published decision from that division:
 
 State v. Jackson,
 

 46 Wash. App. 360
 
 , 365,
 
 730 P.2d 1361
 
 (1986).
 
 Id.
 
 at 6. This Division One panel recognized that Divisions Two and Three of the Court of Appeals have reached an opposite conclusion regarding the admissibility of sexual morality evidence
 
 [7]
 
 but determined that that conflict was immaterial because "counsel has ... no duty to pursue strategies that appear unlikely to succeed, and no duty to anticipate changes in the law."
 
 Id.
 
 (citing
 
 State v. Brown,
 

 159 Wn. App. 366
 
 , 371-72,
 
 245 P.3d 776
 
 (2011) ).
 

 ¶18 As for the trial court's finding that Witchley's depression had "fairly obvious[ly]" "severely handicapped" his representation of Lopez, 11 VRP (Oct. 30, 2015) at 1315, the court interpreted that finding as relating solely to Lopez's per se prejudice/quasi-due process argument and held that defendants have no right to counsel free from mental illness.
 
 Id.
 
 at 2.
 

 ¶19 Lopez petitioned this court for review, which we granted.
 
 Lopez,
 

 189 Wash.2d 1001
 
 ,
 
 400 P.3d 1263
 
 .
 

 ANALYSIS
 

 I. Ineffective Assistance of Counsel Requires a Showing of Deficient Performance and Prejudice; Whether Counsel's Performance Was Deficient and Prejudicial Is a Mixed Question of Fact and Law, Which We Review De Novo
 

 A. The Test for Ineffective Assistance of Counsel
 

 ¶20 A criminal defendant is entitled to effective assistance of counsel. U.S. CONST . amend. VI ; WASH. CONST . art. I, § 22 ;
 
 In re Pers. Restraint of Yung-Cheng Tsai,
 

 183 Wash.2d 91
 
 , 99,
 
 351 P.3d 138
 
 (2015). Effective assistance includes many things. "It is thus impossible to 'exhaustively define the obligations of counsel [ ]or form a checklist for judicial evaluation of attorney performance.' "
 
 Tsai,
 

 183 Wash.2d at 99-100
 
 ,
 
 351 P.3d 138
 
 (alternation in original) (quoting
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 , 688,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) ).
 

 ¶21 Nevertheless, effective representation 'entails certain basic duties,' such as
 

 a duty of loyalty, a duty to avoid conflicts of interest[,] ... the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such
 skill and knowledge as will render the trial a reliable adversarial testing process.
 

 Id.
 
 at 100,
 
 351 P.3d 138
 
 (alterations in original) (quoting
 
 Strickland,
 

 466 U.S. at 688
 
 ,
 
 104 S.Ct. 2052
 
 ). In addition, the "right to effective assistance includes a 'reasonable investigation' by defense counsel."
 
 State v. Boyd,
 

 160 Wash.2d 424
 
 , 434,
 
 158 P.3d 54
 
 (2007) (citing
 
 Strickland,
 

 466 U.S. at 684
 
 ,
 
 104 S.Ct. 2052
 
 ;
 
 Brett,
 

 142 Wash.2d at 873
 
 ,
 
 16 P.3d 601
 
 ). Reasonable investigation "includes expert assistance necessary to an adequate defense."
 
 State v. Punsalan,
 

 156 Wash.2d 875
 
 , 878,
 
 133 P.3d 934
 
 (2006) (citing
 
 Ake v. Oklahoma,
 

 470 U.S. 68
 
 , 72,
 
 105 S.Ct. 1087
 
 ,
 
 84 L.Ed.2d 53
 
 (1985) ).
 

 ¶22 If an attorney's performance is deficient, the next question is whether it caused prejudice. "Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.' "
 
 State v. Estes,
 

 188 Wash.2d 450
 
 , 458,
 
 395 P.3d 1045
 
 (2017) (quoting
 
 State v. Kyllo,
 

 166 Wash.2d 856
 
 , 862,
 
 215 P.3d 177
 
 (2009) and citing
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 ). "[A] 'reasonable probability' is lower than a preponderance standard."
 

 Id.
 

 (citing
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 ;
 
 State v. Jones,
 

 183 Wash.2d 327
 
 , 339,
 
 352 P.3d 776
 
 (2015) ). "Rather, it is a probability sufficient to undermine confidence in the outcome."
 

 Id.
 

 (citing
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 ).
 

 B. The Standard of Review for Trial Court Rulings on Ineffective Assistance of Counsel
 

 ¶23 "[C]laims of ineffective assistance of counsel present mixed questions of law and fact."
 
 Brett,
 

 142 Wash.2d at 873
 
 ,
 
 16 P.3d 601
 
 (citing
 
 State v. S.M.,
 

 100 Wash. App. 401
 
 , 409,
 
 996 P.2d 1111
 
 (2000) ). We review a trial court's factual findings made in the course of deciding an ineffective assistance issue for substantial evidence.
 
 [8]
 

 See
 
 id.
 

 (citing
 
 In re Pers. Restraint of Gentry,
 

 137 Wash.2d 378
 
 , 410,
 
 972 P.2d 1250
 
 (1999) (citing RAP 16.14(b) ) ). But we review "[t]he legal conclusions flowing from such findings and testimony ... de novo."
 
 Id.
 
 at 873-74,
 
 16 P.3d 601
 
 (citing
 
 State v. Davis,
 

 25 Wash. App. 134
 
 , 137 n.1,
 
 605 P.2d 359
 
 (1980) ). Because the ultimate conclusion of whether counsel's performance was ineffective constitutes an application of law to established facts, it is "a mixed question of fact and law
 reviewed de novo."
 
 State v. Sutherby,
 

 165 Wash.2d 870
 
 , 883,
 
 204 P.3d 916
 
 (2009) (citing
 
 In re Pers. Restraint of Fleming,
 

 142 Wash.2d 853
 
 , 865,
 
 16 P.3d 610
 
 (2001) );
 
 accord
 

 Ornelas v. UnitedStates,
 

 517 U.S. 690
 
 , 696-97,
 
 116 S.Ct. 1657
 
 ,
 
 134 L.Ed.2d 911
 
 (1996) (applying same standard of review to ultimate conclusions of probable cause and reasonable suspicion because they involve mixed questions of law and fact).
 

 ¶24 Lopez argues that a different, more deferential, standard applies when the trial court grants (rather than denies) a new trial based on ineffective assistance of counsel. Lopez correctly observes that a trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion,
 
 State v. Hawkins,
 

 181 Wash.2d 170
 
 , 179,
 
 332 P.3d 408
 
 (2014) (citing
 
 State v. Williams,
 

 96 Wash.2d 215
 
 , 221,
 
 634 P.2d 868
 
 (1981) ), but that we generally give greater deference to a trial court decision to grant a new trial than to deny one,
 

 id.
 

 (citing
 
 State v. Brent,
 

 30 Wash.2d 286
 
 , 290,
 
 191 P.2d 682
 
 (1948) ). He is also correct that trial courts generally have "wide discretion in deciding whether or not to grant a new trial" because " 'the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge than can [appellate courts] from a cold, printed record.' "
 

 Id.
 

 (quoting
 
 State v. Wilson,
 

 71 Wash.2d 895
 
 , 899,
 
 431 P.2d 221
 
 (1967) ).
 

 ¶25 Those reasons and that deferential standard do not, however, apply to questions of law and mixed questions of law and fact.
 
 See
 

 State v. Mohamed,
 

 186 Wash.2d 235
 
 , 240-41,
 
 375 P.3d 1068
 
 (2016) (" 'Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial....' " (quoting
 
 Williams,
 

 96 Wash.2d at 221
 
 ,
 
 634 P.2d 868
 
 ) ). And that is precisely what we have here. We therefore review the trial court's factual findings for substantial evidence and its legal conclusions de novo.
 

 C. There Is No Separate, Different Ineffective Assistance Test for Lawyers Suffering from Mental Illness
 

 ¶26 Lopez argues that the court should presume deficient performance when counsel is afflicted by mental illness. Pet'r's Suppl. Br. at 9 (citing U.S. CONST . amend. XIV ). We disagree.
 

 ¶27 Lopez's argument is based on the notion that an attorney suffering from mental illness is categorically unable to provide effective representation. Lopez provides no evidence to support this notion, and we cannot find any support for it either. In fact, the rule we find is just the opposite: attorneys and judges may have disabilities of all kinds, mental as well as physical, but that alone does not disable them from practicing law or adjudicating cases. The ability to be an effective professional depends, instead, on the actual effect of the disability on the attorney's performance.
 
 Dows v. Wood,
 

 211 F.3d 480
 
 , 485 (9th Cir. 2000) ("The mere fact that counsel may have suffered from a mental illness at the time of trial ... has never been recognized by the Supreme Court as grounds to automatically presume prejudice.");
 
 Smith v. Ylst,
 

 826 F.2d 872
 
 , 876 (9th Cir. 1987) ("Rather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe it is more prudent to evaluate the attorney's actual conduct of a trial in light of allegations of mental incompetence.");
 

 Johnson v. Norris,
 

 207 F.3d 515
 
 , 518 (8th Cir. 2000) (declining to adopt a per se presumption of ineffective assistance of counsel when trial counsel suffers from mental illness (citing
 
 Pilchak v. Camper,
 

 935 F.2d 145
 
 , 149 (8th Cir. 1991) ) ). Indeed, there are many exceptionally talented lawyers who suffer from mental illness without causing harm to their clients. Br. of WACDL (Washington Association of Criminal Defense Lawyers) as Amicus Curiae at 5;
 
 see
 
 James T.R. Jones,
 
 "High Functioning": Successful Professionals with Severe Mental Illness,
 
 7 DUKE F. L. & SOC. CHANGE 1 (2015).
 

 ¶28 This does not mean that evidence of counsel's mental health (or physical health) is irrelevant. When counsel's ability to adequately investigate, prepare, communicate, or present the client's case is impaired by disability, counsel's performance might well be deficient. The trial court therefore applied
 the correct standard when it stated that the proper focus is on the attorney's performance, not on the mere existence of a disability: "Really, the question is whether Mr. Witchley's handling of the entire case, including pretrial investigation and communications with his client, may have been
 
 adversely affected
 
 by his mental health."
 
 [9]
 
 11 VRP (Oct. 30, 2015) at 1311 (emphasis added).
 ¶29 Thus, to prevail on his ineffective assistance of counsel claim, Lopez must prove that Witchley's performance was both deficient and caused prejudice. We review the trial court's factual findings related to these issues for substantial evidence. We review its conclusions of law, and its resolution of mixed questions of law and fact, de novo.
 II. The Trial Court's Factual Finding That Witchley's Performance before and during Trial Was "Severely Handicapped" by Depression Is Supported by Overwhelming Evidence; The Trial Court's Conclusion That This Constituted Deficient Performance Is Legally Correct
 

 ¶30 The trial court found that Witchley's pretrial investigation and trial performance was "severely handicapped" by his depression.
 
 Id.
 
 at 1315. This finding, the trial court explained, extended beyond Witchley's failure to present sexual morality and decency evidence since "the motion for new trial in this matter raises issues that go beyond simply the failure to call reputation testimony."
 
 Id.
 
 at 1311. According to the trial court,
 "Really, the question is whether Mr. Witchley's handling of the entire case, including pretrial investigation and communications with his client, may have been adversely affected by his mental health."
 
 Id.
 
 The trial court found that it was.
 
 Id.
 
 at 1315.
 
 [10]
 

 ¶31 The trial court made this finding after considering Sanderson's live testimony, Sanderson's written declaration, Witchley's transcribed and audio recorded interview, Witchley's written declaration, the letter written by Witchley's psychologist, and the trial court's own observations throughout trial proceedings. But the trial court did not enter any written factual findings and conclusions of law to explain that finding. The trial court did not do so because Lopez's second lawyer said he did not need them and the State did not request them.
 
 Id.
 
 at 1319. Instead, the trial court incorporated its oral ruling into its written order. CP at 350. We therefore review the trial court's oral ruling in conjunction with the record to determine whether the trial court's factual finding that Witchley's pretrial and trial
 preparation was severely handicapped by depression is supported by substantial evidence. We hold that it was.
 

 ¶32 First, we have the record of trial and pretrial proceedings. As discussed above,
 
 supra
 
 p. 1120, Witchley's failures to appear, failure to submit briefing, and apparent inability to follow simple court orders were clear from the record. They were also red flags for the judge, who tried to address these deficiencies as they arose but became convinced that his efforts did not work.
 

 ¶33 Next, we have the hearing on the motion for a new trial. Sanderson testified that Witchley identified several tasks as necessary for trial preparation. For example, he told her to investigate how busy the day care center's parking lot was. 11 VRP (Oct. 8, 2015) at 1293. He sought that evidence to undermine L.M.'s claim that Lopez molested her in such a busy area yet there were no witnesses. Witchley also asked Sanderson to compile evidence regarding L.M.'s reputation for lying.
 
 Id.
 

 ¶34 But Witchley completely " 'checked out' " of Lopez's case before those tasks were completed. 11 VRP (Oct. 30, 2015) at 1312. Witchley failed to request additional OPD funding for Sanderson to complete that investigation, failed to show up for meetings with her so she could not help him develop the defense, and failed to return her messages so she could not tell him about the "important" case information she discovered. CP at 289. These examples support Sanderson's assertion that Witchley "checked out" of other necessary trial preparation and the trial court's conclusion that this partial development of Lopez's case "severely handicapped" Witchley's performance at trial. Indeed, according to Sanderson, Witchley never followed through on trial exhibits he originally requested and other trial necessities.
 

 ¶35 Witchley's own statements also support the assertion that he "checked out" before the trial. Witchley acknowledged that he did not submit additional OPD funding requests because he "simply failed to appropriately prioritize
 submission of [the request]" "[f]or a variety of not-so-good reasons."
 
 Id.
 
 at 93. Clearly, those "not-so-good reasons" included his severe depression, which caused him to miss meetings with Sanderson to discuss the progress of her investigation, to not prepare trial exhibits and witness examinations, and to not view the day care center's parking lot. Notably, according to Sanderson, Witchley knew " 'that he shouldn't have taken the case to trial and that he was not emotionally capable of working on it,' " 11 VRP (Oct. 30, 2015) at 1313, but " 'didn't want to get off the case' " because " 'he was financially dependent on Mr. Lopez's case,' "
 
 id.
 
 at 1312-13.
 
 [11]
 
 ¶36 We agree with the trial court that this fell well below prevailing professional norms and therefore constitutes deficient performance.
 
 Wiggins v. Smith,
 

 539 U.S. 510
 
 , 521,
 
 123 S.Ct. 2527
 
 ,
 
 156 L.Ed.2d 471
 
 (2003) (Whether counsel's performance was deficient depends on " 'prevailing professional norms.' " (quoting
 
 Strickland,
 

 466 U.S. at 688
 
 ,
 
 104 S.Ct. 2052
 
 ) ).
 

 ¶37 Neither Witchley nor the State provides any strategic or tactical explanation for Witchley's failure to conduct trial preparation that he himself deemed necessary when he was well. And there is no permissible strategic reason for failing to submit court-requested briefing, failing to procure payment for the investigator, and failing to show up for trial. To the contrary, Witchley acknowledged that Sanderson's investigative services were "necessary to [Lopez's] defense," CP at 92, and necessary for him to "adequately prepare [ ] for trial in this case,"
 
 id.
 
 at 94.
 

 ¶38 We therefore conclude the trial court's factual findings about Witchley's deficiencies are supported by substantial
 evidence. We further agree with the trial court that these basic failures-including Witchley's failure to investigate, failure to prepare for trial, and failure to show up to court-"fairly obvious[ly]" meet the legal definition of "deficient performance."
 
 [12]
 
 11 VRP (Oct. 30, 2015) at 1315;
 
 see
 

 Yung-Cheng Tsai,
 

 183 Wash.2d at 100
 
 ,
 
 351 P.3d 138
 
 ;
 
 Boyd,
 

 160 Wash.2d at 434
 
 ,
 
 158 P.3d 54
 
 ;
 
 Punsalan,
 

 156 Wash.2d at 879
 
 ,
 
 133 P.3d 934
 
 .
 
 [13]
 

 III. The Trial Court's Factual Finding That Witchley's Failures "Severely Handicapped" His Performance Is Supported by Substantial Evidence, and Its Implicit Conclusion That This Caused Prejudice Is Legally Correct
 

 ¶39 To prevail on a claim of ineffective assistance of counsel, a defendant must also show that counsel's deficient performance caused prejudice.
 
 E.g.,
 

 Canha,
 

 189 Wash.2d at 377
 
 ,
 
 402 P.3d 266
 
 (citing
 
 Grier,
 
 171 Wash.2d at 32-33,
 
 246 P.3d 1260
 
 ). The
 
 Strickland
 
 prejudice test "is ultimately concerned with 'the fundamental fairness of the proceeding whose result is being challenged.' "
 
 In re Pers. Restraint of Crace,
 

 174 Wash.2d 835
 
 , 844,
 
 280 P.3d 1102
 
 (2012) (quoting
 
 Strickland,
 

 466 U.S at 696
 
 ,
 
 104 S.Ct. 2052
 
 ). " 'In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process
 that our system counts on to produce just results.' "
 

 Id.
 

 A defendant must therefore show " ' "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." ' "
 
 Canha,
 

 189 Wash.2d at 377
 
 ,
 
 402 P.3d 266
 
 (quoting
 
 Grier,
 
 171 Wash.2d at 34,
 
 246 P.3d 1260
 
 (quoting
 
 Kyllo,
 

 166 Wash.2d at 862
 
 ,
 
 215 P.3d 177
 
 ) ). But a "reasonable probability" is lower than a preponderance standard.
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 ;
 
 Estes,
 

 188 Wash.2d at 458
 
 ,
 
 395 P.3d 1045
 
 . It "is a probability sufficient to undermine
 confidence in the outcome."
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 .
 

 ¶40 The trial court said Witchley's performance "fairly obvious[ly]" "severely handicapped" the defense. 11 VRP (Oct. 30, 2015) at 1311, 1315. To the extent this is a factual finding about what really happened, it is supported by substantial evidence. Sanderson testified that Witchley defined the investigation necessary for the case before his illness overcame him. 11 VRP (Oct. 8, 2015) at 1293. She also explained that Witchley defined other necessary trial preparation, including the assembly of exhibits, before his depression "handicapped" him. She further explained that she knew the unfinished work was sufficiently "important" to Lopez's case based on her 15 plus years of work on criminal defense cases, including many cases with Witchley. She shared her contemporaneous concern about the importance of this unfinished work by leaving a voicemail, an e-mail, and text messages asking Witchley to call her back. CP at 289. And she explained that that work was never finished because Witchley "checked out" of the case-and there was no evidence that he ever fully checked back in.
 

 Id.
 

 In addition, Sanderson never got around to collecting evidence regarding "[L.M.'s] propensity for lying or making up stories or exaggerating stories," 11 VRP (Oct. 8, 2015) at 1293, even though Lopez's entire defense theory at trial was that L.M. was lying. 10 VRP (Mar. 12, 2015) at 1198.
 

 ¶41 Sanderson's testimony corresponded with the trial judge's own contemporaneous observations of Witchley's
 performance (and failures) at trial. The trial judge observed firsthand Witchley's inability to follow through on simple tasks like submitting required briefing or waking up to come to court.
 
 Supra
 
 p. 1120. The judge tried talking to Witchley, threatening him with financial sanctions, and eventually sanctioning him to correct the problem, but none of this worked. All of this evidence supports the trial court's factual finding that Witchley's trial preparation and performance was "fairly obvious[ly]" "severely handicapped." 11 VRP (Oct. 30, 2015) at 1315.
 

 ¶42 It also supports the trial court's implicit legal conclusion that this adverse effect amounted to prejudice.
 
 Id.
 
 at 1311-15. This case was not a slam-dunk case for the State. The outcome depended solely on the credibility of a six-and-a-half-year-old's contradictory report. The jury deliberated for over a day,
 
 [14]
 
 after a seven day trial.
 
 [15]
 
 The trial judge who heard and saw the same evidence as the jury expressly stated that "this was a close case" that "could have gone the other way."
 
 Id.
 
 at 1310. The trial court's assessment reflected Witchley's professional assessment as well. Witchley believed, based on his 25 years of experience as a criminal defense attorney, CP at 304, that this was a close case:
 

 I thought it-I really thought it was gonna be a hung jury is what I thought to tell you the truth, you know. No-um anyone's an idiot if they-any defense attorney is an idiot if they tell you that you're-they're gonna win. Any defense case can be lost[,] ... includ[ing]-you know obviously including this one. But, I did think it had the hallmarks of a hung jury.
 

 CP at 245-46.
 

 ¶43 Given the fact that the outcome of this case turned on L.M.'s credibility, that it was a close case, and that the serious deficiencies in Witchley's pretrial preparation and trial performance were clear and debilitating, we are convinced
 based on these unique facts that there is a reasonable probability of prejudice sufficient to undermine confidence in the outcome of Lopez's trial.
 
 [16]
 
 CONCLUSION
 

 ¶44 We agree with the trial court that Witchley's pretrial and trial performance was deficient and that the deficiency caused prejudice. We therefore reverse the Court of Appeals and affirm the trial court's decision to grant a new trial due to ineffective assistance of counsel.
 

 WE CONCUR:
 

 Fairhurst, C.J.
 

 Madsen, J.
 

 Stephens, J.
 

 Wiggins, J.
 

 11 Verbatim Report of Proceedings (VRP) (Oct. 30, 2015) at 1315.
 

 Clerk's Papers (CP) at 289.
 

 E.g.,
 

 In re Pers. Restraint of Canha,
 

 189 Wash.2d 359
 
 , 377,
 
 402 P.3d 266
 
 (2017) (citing
 
 State v. Grier,
 

 171 Wash.2d 17
 
 , 32-33,
 
 246 P.3d 1260
 
 (2011) ).
 

 Witchley was never formally disbarred from practice in Washington because he voluntarily resigned his license in lieu of disbarment. CP at 298-310.
 

 Unrelated to the issues before us, Lopez also claimed that Witchley was deficient because Witchley allegedly failed to convey a plea offer to Lopez,
 
 id.
 
 at 129-33, and allegedly knew that Lopez could not understand the court appointed interpreter and did not inform the court of that communication barrier,
 
 id.
 
 at 125-28. The trial court rejected those claims, 11 VRP (Oct. 30, 2015) at 1317, and Lopez did not seek review of that ruling.
 

 According to Sanderson, her assignment was to "go back and interview day care workers to find out if [L.M.] had a propensity for lying or making up stories or exaggerating stories" and learn "what [Lopez's] reputation in the community was for ... along the lines of that he's not a child molester, that he's a good, a good person," 11 VRP (Oct. 8, 2015) at 1293, specifically Lopez's "good sexual morality and/or decency in the community,"
 
 id.
 
 at 1297.
 

 Compare
 

 State v. Griswold,
 

 98 Wash. App. 817
 
 , 828,
 
 991 P.2d 657
 
 (2000) (Division Three holding evidence of sexual morality and decency is admissible),
 
 abrogated on other grounds by
 

 State v. DeVincentis,
 

 150 Wash.2d 11
 
 ,
 
 74 P.3d 119
 
 (2003),
 
 and
 

 State v. Harper,
 

 35 Wash. App. 855
 
 , 859-60,
 
 670 P.2d 296
 
 (1983) (Division Two stating such evidence is admissible),
 
 with
 

 Jackson,
 

 46 Wash. App. at 365
 
 ,
 
 730 P.2d 1361
 
 (Division One holding such evidence is inadmissible).
 

 " 'Substantial evidence' means evidence that is sufficient ' "to persuade a rational, fair-minded person of the truth of the finding." ' "
 
 Blackburn v. State,
 

 186 Wash.2d 250
 
 , 256,
 
 375 P.3d 1076
 
 (2016) (quoting
 
 Hegwine v. Longview Fibre Co.,
 

 162 Wash.2d 340
 
 , 353,
 
 172 P.3d 688
 
 (2007) (quoting
 
 In re Estate of Jones,
 

 152 Wash.2d 1
 
 , 8,
 
 93 P.3d 147
 
 (2004) ) ). "So long as this substantial evidence standard is met, 'a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.' "
 

 Id.
 

 (quoting
 
 Sunnyside Valley Irrig. Dist. v. Dickie,
 

 149 Wash.2d 873
 
 , 879-80,
 
 73 P.3d 369
 
 (2003) ).
 

 The concurrence in the dissent is concerned that this decision will create several problems. Those concerns lack foundation.
 

 The first problem that it suggests is that this decision will allow attacks on convictions based on defense counsel's mental illness alone. But that is not what this opinion says; it says just the opposite: "[A]ttorneys and judges may have disabilities of all kinds, mental as well as physical, but that alone does
 
 not
 
 disable them from practicing law or adjudicating cases."
 
 Supra
 
 p. 1124 (emphasis added).
 

 The second problem that the concurrence in dissent suggests is that this decision creates a new rule allowing evidence of defense counsel's mental health to be admitted in ineffective assistance of counsel proceedings. But this opinion does not change the law on the admissibility of such evidence at all; in fact, it maintains the status quo. It adheres to the general rule that factual data within and outside the record is relevant to whether counsel's performance is deficient. Sometimes, that factual data involves evidence of defense counsel's health.
 
 State v. Herron,
 
 noted at
 
 130 Wash. App. 1015
 
 ,
 
 2005 WL 2858080
 
 , at *1 (involving claim that defense counsel was under the influence of alcohol during trial proceedings);
 
 Babbitt v. Woodford,
 

 177 F.3d 744
 
 , 746 (9th Cir. 1999) (citing evidence that defense counsel had resigned from legal practice amid evidence that he had drank three or four alcoholic drinks on a number of occasions while on lunch recess during trial);
 
 In re Pers. Restraint of Lui,
 

 188 Wash.2d 525
 
 , 573,
 
 397 P.3d 90
 
 (2017) (Madsen, J., dissenting) (involving claim that defense counsel was functionally and mentally absent at trial due to old age and deteriorating health). That is because central to the deficient performance analysis is whether counsel had tactical reasons for acting or failing to act. Evidence that counsel failed to act because he or she "checked out" of the case for whatever reason (e.g., sleeping, mental health, drug use, alcoholism, or financial problems) is certainly relevant to rebut
 
 Strickland
 
 's presumption that counsel had tactical reasons for failing to act.
 

 The third problem that the concurrence in dissent suggests is that any inquiry into defense counsel's mental health would somehow violate the Americans with Disabilities Act of 1990 (ADA),
 
 42 U.S.C. §§ 12101
 
 -12213, or be inconsistent with administration guidelines from the American Bar Association (ABA). The ADA prohibits employers and public entities from discriminating against individuals who have a physical or mental impairment. It does not prohibit courts from inquiring into whether an attorney's performance was impaired by a mental condition while representing a client. Nor does the ABA. The ABA's Resolution 102 urges legal licensing entities to focus their admission questions on conduct or behavior that impairs an applicant's ability to practice law in a competent, ethical, and professional manner rather than on the presence of any mental health diagnosis, which is exactly what we do in our ineffective assistance of counsel analysis in this case. Am. Bar Ass'n, Resolution 102 (Aug. 2015), https://americanbar.org/content/dam/aba/images/abanews/2015annual resolutions/102.pdf Our analysis is focused on Witchley's conduct and failures at trial, though we have not ignored evidence of Witchley's deteriorating mental health either. But nothing in the ABA's resolutions or guidelines suggest that we should ignore mental health or substance abuse issues in our legal community. To the contrary, the ABA's Resolution 106 requires that we maintain an open discussion about mental health and substance use disorders. To that end, the ABA maintains a public database of attorney disciplinary cases involving mental health and substance abuse concerns. Am. Bar Ass'n, Case Law Reviews, https://www.americanbar.org/groups/lawyer_assistance/resources/case_law_reviews.html (last visited Jan. 19, 2018).
 

 We are unpersuaded by the State's attempt to narrow the trial court's finding to only Witchley's tardiness. Wash. Supreme Court oral argument,
 
 State v. Lopez,
 
 No. 94418-1 (Nov. 16, 2017), at 23 min., 20 sec. through 24 min., 39 sec.,
 
 audio recording by
 
 TVW, Washington State's Public Affairs Network, http://www.tvw.org.
 

 The State disputes whether Witchley ever admitted that he was not mentally equipped to represent Lopez at trial and that he was financially dependent on the case. Wash. Supreme Court oral argument,
 
 supra,
 
 at 36 min., 10 sec. through 36 min., 22 sec. But the State never contested this statement or Sanderson's credibility during the reference hearing. Even if the State had challenged Sanderson's credibility, our review of the trial court's factual finding is for substantial evidence to support that finding, not to make credibility determinations.
 
 In re Marriage of Rideout,
 

 150 Wash.2d 337
 
 , 350-51,
 
 77 P.3d 1174
 
 (2003).
 

 The concurrence in the dissent misapprehends our holding. We do not affirm the trial court's finding of ineffective assistance based on Witchley's chronic tardiness or failure to submit invoices for payment. Rather, we affirm based on Witchley's many failures: his failure to investigate, his failure to prepare for trial, and his failure to show up for court.
 

 Notably, we agree with the Court of Appeals that had the trial court based its finding of deficient performance solely on Witchley's failure to investigate reputation evidence, that finding would not be sustainable. We agree with the Court of Appeals that "counsel has ... no duty to pursue strategies that appear unlikely to succeed, and no duty to anticipate changes in the law."
 
 Lopez,
 
 slip op. at 6 (citing
 
 Brown,
 

 159 Wash. App. at 371-72
 
 ,
 
 245 P.3d 776
 
 ). Even though there was an existing split among the Court of Appeals divisions regarding the admissibility of sexual morality and reputation evidence at the time of Lopez's trial, any appeal in Lopez's case would have been reviewed by Division One, which had already held that such reputation evidence is inadmissible.
 
 Jackson,
 

 46 Wash. App. at 365
 
 ,
 
 730 P.2d 1361
 
 .
 

 10 VRP (Mar. 12, 2015) at 1211 (deliberation beginning around 12:36 p.m.); 10 VRP (Mar. 13, 2015) at 1212 (jury verdict at 2:03 p.m. the next day).
 

 CP at 54-73.
 

 We reject Lopez's argument that he does not have to prove prejudice. The United States Supreme Court, in "
 
 Cronic
 
 [ (
 
 United States v. Cronic,
 
 466
 

 U.S. 648
 
 ,
 
 104 S.Ct. 2039
 
 ,
 
 80 L.Ed.2d 657
 
 (1984) ),] recognized a narrow exception to
 
 Strickland
 
 's holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense."
 
 Florida v. Nixon,
 

 543 U.S. 175
 
 , 190,
 
 125 S.Ct. 551
 
 ,
 
 160 L.Ed.2d 565
 
 (2004). This narrow exception applies when " 'counsel
 
 entirely
 
 fails to subject the prosecution's case to meaningful adversarial testing,' "
 
 Bell v. Cone,
 

 535 U.S. 685
 
 , 697,
 
 122 S.Ct. 1843
 
 ,
 
 152 L.Ed.2d 914
 
 (2002) (quoting
 
 Cronic,
 

 466 U.S. at 659
 
 ,
 
 104 S.Ct. 2039
 
 ), or the defendant " 'is denied counsel at a critical stage of his trial,' "
 
 Woods v. Donald,
 
 --- U.S. ----,
 
 135 S.Ct. 1372
 
 , 1375,
 
 191 L.Ed.2d 464
 
 (2015) (quoting
 
 Cronic,
 

 466 U.S. at 659
 
 ,
 
 104 S.Ct. 2039
 
 ). Although Witchley's pretrial and trial deficiencies were serious, they did not deprive Lopez entirely of a defense.