# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60084-6-II |
| Respondent, | |
| v. | |
| GEORGE MITCHELL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — George Mitchell appeals his sentence imposed following his guilty plea to second degree burglary. Mitchell argues that he received ineffective assistance of counsel because his counsel failed to provide the superior court with required reports supporting his request for a mental health sentencing alternative (MHSA), RCW 9.94A.695. We affirm.

FACTS

In December 2022, the State charged Mitchell with second degree burglary. In May 2024, Mitchell pleaded guilty as charged. Mitchell's extensive criminal history resulted in an offender score of more than 9 points[1] and a standard sentencing range of 51-68 months. Under the terms of the plea agreement, the State would recommend a standard range sentence of 51 months, and Mitchell could argue for a 36-month MHSA.

---

[1] Mitchell's total offender score was calculated at 44 points.

On the morning of August 8, Mitchell's counsel filed a copy of the Department of Corrections' (DOC) MHSA report.[2] Mitchell's counsel also presented the State and the superior court with a sentencing memorandum.

DOC's MHSA report documented Mitchell's mental health history and diagnoses: a history of post-traumatic stress disorder and major depressive disorder. Mitchell also had an extensive mental health treatment history including through DOC programming, in the community, and the felony mental health court program. Mitchell reported that he did well when he was taking his medication and engaged in mental health treatment. However, when he was unable to access medication and services he resorted to self-medication with illegal substances and criminal behavior. Mitchell explained that the most current burglary occurred after he had run out of the 3-month supply of medication he had following his release from DOC and was unable to access services to get more medication.

DOC's report identified a recent mental health assessment with Neighborcare, which would provide mental health care for Mitchell through Mindful Therapy Group. The DOC report included the assessment and treatment plan. However, the report did not include an agreement by Mindful Therapy Group or Neighborcare to comply with the reporting requirements of an MHSA.[3]

---

[2] It is unclear why the report was not filed until the day of sentencing or if the superior court already had a copy of the report. The superior court had ordered DOC to prepare the MHSA report in November 2023. DOC completed the report in March 2024.

[3] RCW 9.94A.695(3) sets forth the relevant requirements for an MHSA presentence investigation:

> To assist the court in its determination [of whether to grant a MHSA], the department shall provide a written report, which shall be in the form of a presentence investigation. . . . The report must contain:
>
> . . . .

In addition to the treatment plan, the DOC report contained recommended community custody conditions to be imposed if the superior court granted the MHSA.

Defense counsel's sentencing memorandum included additional information in support of the request for an MHSA. Defense counsel highlighted that, since the current offense, Mitchell had become employed by the City of Seattle Parks Department. Defense counsel noted that while sober and medicated, Mitchell was gainfully employed and an asset to the community. Defense counsel included multiple letters of recommendation from Mitchell's supervisors and co-workers commending Mitchell's recent accomplishments at the Parks Department. C

As it related to treatment plans, Defense counsel included documentation from Neighborcare and Mental Health for All establishing that neither provider would agree to the requirements of providing treatment under an MHSA. Defense counsel also included a letter from Mitchell's current mental health care provider at Holistia Health, Dr. Ioana Hall. Dr. Hall stated that Mitchell had been attending care consistently and had shown discipline and compliance with his treatment plan. Dr. Hall's letter did not address whether she would or could comply with the reporting requirements of an MHSA.

At the sentencing hearing, the State opposed Mitchell's request for an MHSA and recommended a low-end standard range sentence of 51 months, which was consistent with the plea agreement. The State emphasized that Mitchell's extensive criminal history resulted in a total offender score of 44 points. The State also noted Mitchell's history of committing similar

---

(ii) An agreement by the treatment provider to monitor the progress of the defendant on the sentencing alternative and notify the department and the court at any time during the duration of the order if reasonable efforts to engage the defendant fail to produce substantial compliance with court-ordered treatment conditions.

burglaries. And the State questioned the relationship between Mitchell's diagnoses—PTSD and depression—and his commission of burglaries. The State argued that Mitchell had already received numerous opportunities and resources, including prior reduced sentences, diversions, DOC programming, and felony mental health court; however, despite these opportunities, Mitchell continued his criminal behavior.

The deputy prosecuting attorney (DPA) from felony mental health court also argued against granting Mitchell an MHSA. The DPA stated that throughout his time in mental health court, Mitchell took medications for nightmares, sleep, and depression, but Mitchell did not take any antipsychotics or mood stabilizers. The DPA asserted that there was no significant nexus between Mitchell's criminal activity and his mental health diagnoses. Through mental health court, Mitchell participated in several treatment modalities, including substance use treatment, moral recognition therapy (to address criminogenic thinking and antisocial behavior), dialectical behavioral therapy, cognitive behavioral therapy, and weekly therapy sessions. Despite treatment and being clean, sober, medicated, and housed, Mitchell committed a residential burglary that resulted in his termination from felony mental health court:

> The crime that he committed to get into felony mental health court, he was clean and sober. The crime that he committed while in felony mental health court, he was clean, sober, and well treated.

3 Verbatim Rep. of Proc. (VRP) at 36. The DPA argued that the problem was Mitchell's refusal to take responsibility for his criminal behavior and it was unlikely he would be successful on MHSA:

> It doesn't matter what treatment Mr. Mitchell chooses, he will continue to commit these crimes and to victimize others, and I would agree with [the prosecutor] that he repeatedly is excused from the responsibility or punishment associated with those crimes.

The case that entered into felony mental health court—it is a standard in our program that with extensive criminal history you plead guilty as charged to enter. However, in his circumstance he had already received the benefit of an amendment, and then through confusing advocacy or the defense attorney, at the time, managed to—allowed him to get an interview and an application in despite having already received that benefit so that, when he was terminated, he already had that and didn't have the same accountability of every other part of the system that's terminated.

Because he had a new felony case, there was a negotiation in which he stipulated to termination but received some benefit in the recommended sentence to the court, and yet the court still, at that point, undermined what was the agreed sentence, and he received less time than we even intended.

And then here we are again, in which he's making all of the exact same arguments that we heard from felony [mental] health court so that he can receive the benefit of a MHSA.

And I will say, Your Honor, there is a rule in felony mental health court that you get one shot. You are afforded so many resources, every treatment possible. 18 months there is patience, and there is grace and room for error, and the theory is that, if you are afforded that opportunity and are unsuccessful, then you don't get to try again.

And if he couldn't be successful in that environment, then how would he be successful in the much less strict version of a MHSA?

3 VRP at 38-39.

Defense counsel admitted that Mitchell had an extensive criminal history and that Mitchell had struggled; however, defense counsel argued that a significant difference from the past was Mitchell's current employment with the City of Seattle Parks Department. Defense counsel highlighted that Mitchell had not committed any additional crimes since his employment and emphasized the positive impact Mitchell had at the Parks Department, including mentoring others.

The superior court questioned defense counsel regarding the lack of an agreement by a treatment provider to comply with the reporting requirements of an MHSA:

THE COURT: So let me ask you, though, [defense counsel]. Looking at the statute—so 9.94A.695 talks about the requirements of the report from the department, and you reference a little bit about entities who are not able to provide treatment, if the court were to go that route.

Maybe I missed it—you can tell me if I've missed it here, but I was looking—you know, the requirement of the statute is there has to be a specific

5

agreement by a treatment provider willing to do this, willing to report any violations—I did not see that anywhere. Did I miss that?

[DEFENSE COUNSEL]: So Holistia, in that document, had not made—like did not explicitly convey—not super clear—

THE COURT: I didn't see it.

[DEFENSE COUNSEL]: I can tell the Court, as an officer of this court, that his doctor did, in fact, communicate that to me unequivocally.

THE COURT: Is that sufficient? It says—what I've got to have in writing, though—

[DEFENSE COUNSEL]: I don't believe that's—

. . . .

. . . So as we—again, starting in that section, it indicates it's contingent upon his agreement to participate in the sentencing alternative and there needs to be serious mental illness. It says that the Court may rely on that situation or other information, and it goes on to say, "If there is insufficient available to determine," then we can look at, and ultimately have, in other—the Court may order this other sort of examination or we can go through that, but it's not a "must," it's not "a court shall".

THE COURT: A proposed treatment plan for the defendant's mental illness, including at a minimum, colon. That's (3)(a). And then (3)(a)(ii) says what I just read.

[DEFENSE COUNSEL]: And my apologies. The part that I was—I think what covers this section here, what I proffered to the Court, it says, "The court may waive the production of this report if sufficient information is available to the court to make a determination under subsection (4), "which is the catchall and says, again, if, in reviewing all of the available information, the court is convinced about the acceptability, availability of the treatment engaged.

THE COURT: Okay. But I guess what I'm saying is, given the history of this particular person with the issues that have been raised, I'm not waiving that.

In other words, if I'm seriously considering this, it seems to me that what I was expecting to see when I was able to review the report was that there is this organization—this mental health organization that's willing to do all the things that is required to make this successful. Because I'll be honest, I had some of the same concerns that [the DPA] has raised about FMHC versus an MHSA sentence because the MHSA is a much more—less structured than the FMHC; right?

So that was one of the questions I had for you was how do I know this is even going to occur and occur within the confines of what the statute contemplates?

[DEFENSE COUNSEL]: So LifeStance is the name of another one of the providers that he's seeing; he's seeing a second provider that provides additional treatment. As to that, Judge, what I would ask you here, I think, as a condition precedent, insofar as the Court is indicating you're not satisfied as a condition precedent—I think that it would be certainly a disservice to Mr. Mitchell to deny on that basis, to deny on what I would proffer here is—

THE COURT: Why is that an—I'm sorry. You've lost me on that one. I'm not sure I understand the argument. I'm just reading from the statute.

[DEFENSE COUNSEL]: Sure. But insofar as what the Court is indicating a willingness to engage with, report these things to DOC, Dr. Hall has communicated that to me, and I have that in writing from Dr. Hall, and I can certainly provide that to the Court right now.

THE COURT: Why don't I have it beforehand, [defense counsel]?

[DEFENSE COUNSEL]: Well, this is an email correspondence from Dr. Hall, and we had engaged previously about this matter and. . .

THE COURT: You can continue with your presentation.

3 VRP at 44-48.[4]

Defense counsel continued, refocusing on the totality of the circumstances, which counsel claimed demonstrated that Mitchell was engaging in treatment in the community, had gainful employment with a positive community impact, and extensive community support. Defense counsel concluded by arguing that Mitchell's current success in the community warranted an additional opportunity to be successful:

And surely Mr. Mitchell is here asking for forgiveness after many, many mistakes. But I do believe, Judge, that he's deserving of additional grace, that he is thriving today in this community, has been thriving and is capable of continuing to do so.

And I think that to send him to prison—he's a 70-year-old man—is as good as a death sentence. And regardless the number of times he may or may not have failed before, the number of times he may have relapsed and fallen into the same cycles—same destructive patterns, that as he sits here before you, Judge, he's a different man. He's a wiser man; he is a better man, and we hope that you will give him the opportunity to remain a man of freedom.

3 VRP at 49.

---

[4] After the sentencing hearing, Linda Jones, Mitchell's partner, filed a copy of a letter from LifeStance with a handwritten note stating that the letter was what the superior court had asked defense counsel for during sentencing. Although the letter states that Mitchell is a current patient and has future appointments scheduled, there is nothing in the letter agreeing to comply with the reporting requirements of an MHSA.

Linda Jones, Mitchell's long-time partner, also spoke in support of granting an MHSA. Jones stated that Mitchell was a different person when he was not on his medication. Currently he was in a better place because of his job. He was a good husband and grandfather and was able to provide for his family. Jones asked that Mitchell be given the opportunity to continue to be a member of the community and his family.

Mitchell addressed the superior court and explained that he ended up committing the current offense because he ran out of his prescribed medication and started self-medicating. He also explained that he had committed his offense in felony mental health court because he had started gambling. Mitchell stated that his job with City of Seattle gave him his dignity back and made him want to give back to the community as a mentor. Mitchell asked the superior court for the opportunity to participate in an MHSA to continue his progress.

The superior court recognized that this was a difficult case, primarily because the standard sentencing range for the offense was high in relation to the offense. The superior court then explained why it was denying the request for an MHSA:

> So then we have the mental health sentencing alternative—and I appreciate the history provided by everyone on both sides on this—also going through, you know, what are the guidelines provided in that statute.
> And really, you know, there was talk about forgiveness and remorse and things like that, and really, it comes down to, though, the issue of the guidelines of the MHSA and whether this Court believes they have been satisfied and would be beneficial both to the community and to the individual.
> I do have a lot of concerns as to the effectiveness of another round of this type of treatment. And I'm noting the mental health—the FMHC and the failure there, which is a much more strict program than this would be. And I pointed out during the argument section about really the lack of information that I have as far as some of the requirements that I think the statute references and that I would want regarding people willing to take responsibilities for that.
> At the end of the day, considering everything, I wish this was a case in which the Court had some discretion on a downward sentence, which it has not been presented that I have that in this case, and I don't believe that I do.

8

Because I cannot, based on the entirety of the circumstances, believe that the MHSA is appropriate. Given that my only other choice is the 51 months, which I would rather give something less than that, but I don't have any choice in that.

3 VRP at 61-62.

The superior court imposed the low-end standard range sentence of 51 months confinement.

Mitchell appeals.

## ANALYSIS

Mitchell argues that he received ineffective assistance of counsel when his defense counsel failed to provide the superior court with an agreement from a treatment provider that complied with RCW 9.94A.695(3)(a)(ii). We disagree.

### A.    LEGAL PRINCIPLES

Both the United States and Washington Constitutions guarantee criminal defendants the right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We presume that counsel is effective. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To demonstrate ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was deficient, and (2) defense counsel's deficient performance prejudiced the defendant. *Id.* at 247-48. "If either element of the test is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

### B.    MITCHELL FAILS TO ESTABLISH PREJUDICE

Mitchell argues that defense counsel was deficient for failing to provide an agreement from a treatment provider that met the requirements of an MHSA. Mitchell also argues that defense counsel's performance was prejudicial because it was likely the superior court would have imposed

an MHSA if defense counsel had provided the agreement from the treatment provider.  We disagree.

Regardless of whether defense counsel's performance was deficient, Mitchell cannot show prejudice.  "'Prejudice exists if there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different.'"  *State v. Lopez*, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018) (internal quotation marks omitted) (quoting *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017)).

Here, the superior court referenced the lack of an agreement from a treatment provider to comply with the reporting requirements of an MHSA in its ruling.  But the superior court also expressed serious concerns about Mitchell's prior failure in felony mental health court.  The superior court had "a lot of concerns as to the effectiveness of another round of this type of [mental health] treatment."  3 VRP at 61.  Further, the superior court clearly expressed that it believed that a lower term of confinement seemed warranted in this case and that "based on the entirety of the circumstances," an MHSA was not appropriate.  3 VRP at 62.  The superior court's decision clearly did not hinge on the lack of an agreement from a treatment that met the reporting requirements of an MHSA:  "At the end of the day, considering everything, . . . [b]ecause I cannot, based on the entirety of the circumstances, believe that the MHSA is appropriate."  3 VRP at 62.

Thus, considering the record as a whole, there is no reasonable probability that the superior court would have imposed an MHSA if defense counsel had provided a written agreement from a treatment provider that met the requirements of an MHSA.  Accordingly, Mitchell has failed to show prejudice, and his ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Price, J.