IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 80384-1-I |
| CHARLIE SHAKER HELO, | ) ) ) | DIVISION ONE |
| Petitioner. | ) ) ) | UNPUBLISHED OPINION |

Hazelrigg, J.— When counsel assumes representation in a criminal case but fails to review the court file and is therefore unaware of information which would allow them to undertake a complete investigation and make informed decisions about the defense, counsel's performance is deficient. Here, the deficient performance prejudiced Charlie S. Helo. We grant Helo's personal restraint petition, vacate his conviction, and remand for a new trial.

## FACTS

For several years, Charlie Helo stored a vehicle at the home of his nephew, Tawfique Helo.[1] In July 2013, Helo contacted his nephew multiple times and demanded that he return the vehicle. On July 2, 2013, Tawfique and a cousin,

---

[1] The underlying facts of Charlie Helo's conviction are derived from this court's unpublished decision resolving his direct appeal. State v. Helo, No. 75655-9-I (Wash. Ct. App. Apr. 30, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/756559.pdf.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

Joseph Helo, drove the vehicle to Helo's home.[2] Tawfique's girlfriend followed in a separate car.

When he arrived, Tawfique began recording a video on his cell phone. Joseph and Tawfique's girlfriend parked nearby and waited. Helo emerged from his house carrying a firearm and his cell phone. Helo was on a call with a Marysville police officer. Helo pointed the gun at his nephew and the two exchanged "heated words." Helo's young children came outside and stood beside him as he waived the firearm. After Helo and his nephew traded further "insults and accusations," Tawfique left the property.

According to Chris Farley, the police officer who was speaking to Helo when Tawfique arrived, Helo was "rambling and not making sense." During the conversation, Helo mentioned that he had a gun and the officer heard the sound of the slide being racked in a semiautomatic pistol. When another police officer contacted Helo after the incident, he did not mention threats, self-defense, or anything else about the encounter with his nephew, and instead, talked at length about an illness.

The State charged Helo with second degree assault. Helo was initially represented by two attorneys who informed the State that Helo intended to assert self-defense.

In November 2014, the court granted Helo's attorneys' request for a competency evaluation. That evaluation occurred on January 22, 2015. The Washington State Hospital (WSH) psychologist who performed the evaluation, Dr.

---

[2] Because Tawfique and Joseph Helo share the same last name as Charlie Helo, we use their first names in some instances for clarity. We intend no disrespect.

2

Phyllis Knopp, determined that Helo was not competent to stand trial. Knopp concluded that Helo suffered from Major Depressive Disorder and made a provisional diagnosis of "Other Specified Neurodevelopmental Disorder."

The court ordered Helo to report to WSH for up to 90 days of treatment to restore competency and for reevaluation, as soon as a bed became available. Meanwhile, on March 24, 2015, a new attorney, Max Harrison, filed a notice of appearance on Helo's behalf.

Helo was not admitted to WSH until August 11, 2015. Upon admission, a staff psychiatrist noted that Helo's insight and judgment appeared to be "adequate and intact." The psychiatrist further noted Helo's report that his cognitive problems appeared to be related to medications, Oxycontin and Xanax, that he had ceased taking.

After reevaluation on August 24, 2015, another WSH psychologist, Dr. Lauren Smith, determined that Helo was competent to proceed to trial. Smith noted that Helo's symptoms appeared to have abated after he discontinued several medications he was taking at the time of the January 2015 evaluation. Therefore, she concluded "it is likely that his presentation at the time of his previous evaluation with Knopp was likely a result of side effects of the many medications he was taking rather than symptoms of an underlying mental illness."

Helo's attorney passed away in September 2015. Yet another attorney, Gurjit Pandher, began representing him in November 2015. The court continued the trial date to February 2016, and shortly before trial, the State filed an amended information adding a firearm enhancement to the charge. Pandher filed a notice

3

indicating an intent to present witness testimony on the issue of self-defense. The court also granted the defense's motion in limine to exclude evidence related to Helo's alleged drug use.

At trial, Helo claimed that he was acting in self-defense and asserted that the State failed to prove that Helo's conduct placed Tawfique in fear. The jury viewed the cell phone video recording of the encounter. Helo did not testify. The jury convicted him as charged.

After his conviction but before sentencing, a new attorney appeared on Helo's behalf and filed a motion seeking a new trial based on ineffective assistance of trial counsel. Helo argued that Pandher failed to adequately investigate and present evidence to support his claim of self-defense. The trial court denied the motion and sentenced Helo to 48 months of confinement.

Helo appealed, challenging the denial of his motion for a new trial. Helo argued that counsel should have presented additional evidence of his nephew's aggressive behavior and called Helo's spouse as a witness. This court observed that counsel presented substantial evidence of self-defense. And, even assuming deficient performance, in light of the recording and the failure to report self-defense immediately after the incident, Helo could not establish prejudice.

Helo filed a timely personal restraint petition, alleging that trial counsel rendered ineffective assistance of counsel by failing to investigate a possible mental health defense. Helo supported his petition with documents to indicate that Pandher was unaware of the WSH competency evaluations. Helo also provided

4

declarations of medical and legal experts to show that the facts warranted investigation of Helo's mental status at the time of the crime.

This court determined that Helo's petition could not be determined solely on the record and transferred the matter to the superior court for a reference hearing. See RAP 16.11(b). The superior court conducted a reference hearing to determine: (1) whether trial counsel's conduct in failing to investigate Helo's mental health status at the time of the crime was constitutionally deficient and, (2) whether Helo was prejudiced by his attorney's performance.

The superior court considered the testimony of Helo's former counsel, another criminal defense attorney, and a clinical and forensic psychologist and a number of exhibits. The court entered findings including the following:

> 39. At a reference hearing in this matter, [Helo's trial attorney] testified that he was not aware that the defendant had been deemed incompetent to stand trial and did not know that the defendant had spent time at Western State Hospital for competency restoration. [The attorney] did not review the court file and was, therefore unaware of the Western State reports.
> . . .
> 43. Licensed Psychologist Natalie Novick Brown testified on the defendant's behalf at the reference hearing. (see exhibit 6 for qualifications).
>
> 44. In her report, admitted as Exhibit 12, Dr. Brown concluded, based on collateral interviews and reports from the defendant, his brother Tony, and the initial Western State evaluation, that the defendant had spina bifida, which caused lifelong cognitive and adaptive impairments resulting in developmental disability[].
>
> 45. Dr. Brown's report concluded, "before, during, and after the time of the offense, Charlie Helo exhibited impaired thinking and disorganized behavior. At the time of the offense, he was a developmentally disabled adult whose capacity to form intentions and control his behavior was severely diminished by the combined effects of his underlying medical condition (i.e. spina bifida) and the medications he was taking." Ex. 12, pg.19.

46. Dr. Brown testified that "the medication on top of the underlying developmental disability increased his thinking problems and ability to exercise good judgment, form intentions and control his behavior."

47. When asked specifically about the defendant's ability to form the intent to threaten Tawfique and cause him fear and intimidation, Dr. Brown testified that his ability to form that intent was "impaired".

. . .

49. Both parties essentially agreed, and the Court finds, that [Helo's attorney's] failure to review the court file, to learn of the Western State evaluations, and to investigate his client's mental state at the time of the offense fell below the reasonable standard of care for an attorney in this case.

50. This Court also finds that Dr. Brown's testimony would likely have been admitted at trial on the issue of the Defendant's capacity to form the intent to commit the crime and that, therefore, either a diminished capacity instruction or a voluntary intoxication instruction would have been warranted.

51. It is very difficult to say whether Dr. Brown's testimony, in and of itself, creates a reasonable probability of changing the outcome of the trial. Her testimony was that the defendant's capacity to form intentions and control his behavior was "severely diminished", and that the defendant's ability to form the intent to cause Tawfique fear was "impaired". The outcome would be more likely to be different if Dr. Brown testified that the defendant was "unable" to form that intent or something similarly definitive. Additionally, the evidence admitted at trial (defendant's statements on the phone and the video) seems to show that the defendant did intend to either intimidate Tawfique or to create apprehension and fear of bodily injury in Tawfique, in order to get Tawfique to leave the area of the defendant's property (after dropping off the car). As such, it does not appear that there is a reasonable probability that, given only the option of Second Degree Assault, the outcome of the trial would have been different with Dr. Brown's testimony.

[52]. On the other hand, with Dr. Brown's testimony regarding his diminished capacity to form intent, and if the defendant and his attorney had made the tactical decision to offer the lesser included crime of [Unlawful Display of a Firearm], there appears to be a reasonable probability that a jury would have convicted of only the lesser included. However, it is not clear to this Court that either the

6

defendant or his attorney would have wanted the jury to have the option of a lesser included offense given the defendant's apparently strong belief that he acted in self-defense and was, therefore, altogether innocent.[3]

ANALYSIS

I.      Standard of Review

Relief by means of a collateral challenge to a conviction is extraordinary and a petitioner must meet a high standard before this court will disturb an otherwise settled judgment.  In re Pers. Restraint Petition of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).  An appellate court may grant relief to a petitioner who is under unlawful restraint.  RAP 16.4; In re Pers. Restraint Petition of Cook, 114 Wn.2d 802, 805, 792 P.2d 506 (1990).  Restraint is unlawful when a conviction is obtained in violation of the United States Constitution or the laws of the State of Washington.  RAP 16.4(c)(2).  To obtain relief by way of a personal restraint petition, a petitioner must establish either constitutional error that caused actual and substantial prejudice or a nonconstitutional error that constitutes a fundamental defect that results in a complete miscarriage of justice.  In re Pers. Restraint Petition of Davis, 152 Wn.2d 647, 671–72, 101 P.3d 1 (2004).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel to help ensure a fair trial.  State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).  To prevail on an ineffective assistance of counsel claim, a defendant must

---

[3] Although the court's ultimate finding refers to unlawful possession of a firearm, the earlier discussion in its ruling makes it clear that the court was addressing the likelihood of prejudice if counsel had presented Brown's testimony at trial and requested an instruction on unlawful display of a weapon as a lesser included offense.

show both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Constitutionally adequate assistance requires that "'counsel must, at a minimum, conduct a reasonable investigation enabling [counsel] to make informed decisions about how best to represent [the] client.'" In re Pers. Restraint of Fleming, 142 Wn.2d 853, 866, 16 P.3d 610 (2001) (emphasis omitted) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994)).

To establish prejudice, a defendant must show there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. Strickland, 466 U.S. at 694. A "reasonable probability" is lower than a preponderance standard. State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A personal restraint petitioner who makes a successful ineffective assistance of counsel claim meets the burden of showing actual and substantial prejudice. State v. Buckman, 190 Wn.2d 51, 63, 409 P.3d 193 (2018); In re Pers. Restraint Petition of Crace, 174 Wn.2d 835, 846–47, 280 P.3d 1102 (2012).

Ineffective assistance of counsel claims present mixed questions of law and fact. State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018). We review a trial court's factual findings made in the course of deciding an ineffective assistance issue for substantial evidence. Id. We review the legal conclusions flowing from the factual findings and testimony de novo. Id. at 116–17.

The superior court found that Helo's trial counsel failed to review the court file and was therefore unaware of the prior determination of incompetency which would have supported a defense of diminished capacity or provided a basis to advocate for a lesser included offense instruction. The parties do not appear to challenge this finding and the record supports it. The parties also do not appear to dispute that this factual finding supports the determination that Helo's attorney's performance was constitutionally inadequate.

Helo contends that the attorney's failure to apprise himself of the matters in the court file was prejudicial because, without complete information, counsel was unable to make informed choices about his defense or fully advise him. Helo claims he was specifically prejudiced because, as the superior court found, (1) Brown's or similar expert testimony would have been admissible at trial, (2) such testimony would have supported both a jury instruction on diminished capacity and a lesser included offense instruction, and (3) there is a reasonable probability that a jury would have convicted him of a lesser crime, if that option had been available.

In order to prove that Helo committed second degree assault under RCW 9A.36.021(1)(c) the State had to prove that he acted with the intent to create apprehension or fear of bodily injury. See State v. Abuan, 161 Wn. App. 135, 154, 257 P.3d 1 (2011) (an act done with intent to create in another apprehension and fear of bodily injury, which in fact creates a reasonable apprehension and imminent fear of bodily injury, is a common law definition of assault recognized in Washington). "Diminished capacity 'allows a defendant to undermine a specific element of the offense, a culpable mental state, by showing that a given mental

9

disorder had a specific effect by which his ability to entertain that mental state was diminished.'" State v. Clark, 187 Wn.2d 641, 650, 389 P.3d 462 (2017) (quoting State v. Gough, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989)).

According to the State, the evidence conclusively established that Helo was capable of forming intent to create fear of injury amounting to assault. Therefore, the admission of evidence that counsel could have discovered and developed in conjunction with a diminished capacity jury instruction would not have changed the outcome. The State relies on the video recording, which is thoroughly described in the record and apparently showed Helo pointing a gun at Tawfique while ordering him to drop the car keys. The State also points to Helo's statements to Farley just before the confrontation, indicating that he had a firearm and was unafraid of going to prison as unequivocal evidence of Helo's intent. Given this evidence, the State maintains that evidence about Helo's cognitive and executive functioning would not have been persuasive.

But it is reasonably probable that Brown's opinion that, at the time of the offense, Helo's "capacity to form intentions and control his behavior was severely diminished" by the combined effects of his underlying medical condition and medications would have affected the jury's interpretation of the evidence. The behavior captured on video and some of Helo's statements could certainly support the claim that Helo intended to create fear or apprehension of physical injury, but there was other evidence that cast doubt on Helo's ability to form the requisite intent. For instance, all of the State's witnesses described Helo's behavior as strange, crazy, and/or incoherent during the incident and in the general timeframe.

And Farley reported that when he tried to find out why a police presence was needed when Tawfique was returning the vehicle, Helo did not respond coherently and "rambl[ed] about different things." When police contacted Helo directly following the incident to obtain his statement, Helo again "began to ramble on" nonsensically. According to the police report, officers determined it was "not safe" at that time to confront Helo at his home because of his "mental state." The video also apparently depicts Helo erratically waiving the firearm around and stating to Tawfique, a close relative, "I don't know you." This contextual evidence in conjunction with expert testimony could have led the jury to conclude that Helo's behavior was susceptible to more than one interpretation and to question whether he acted with the specific intent required for second degree assault.

The State acknowledges that unlawful display of a weapon can be a lesser included offense of second degree assault. See State v. Prado, 144 Wn. App. 227, 243, 181 P.3d 901 (2008) (each element of the lesser included offense of unlawful display of a weapon is a necessary element of the offense of first degree assault). Nevertheless, the State maintains that Helo was not prejudiced by counsel's failure to request an instruction on the lesser crime. The State argues that Helo would not have been entitled to a lesser included offense instruction because the evidence as a whole does not support the inference that Helo committed only unlawful display of a weapon. But, as our supreme court recently clarified, the factual prong of State v. Workman[4] does not require evidence that would exclude commission of the greater offense. State v. Coryell, __ Wn.2d __,

---

[4] 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978).

483 P.3d 98, 109 (2021) (the question is not whether the evidence excludes the greater charged crime; it is whether the evidence raises an inference that the lesser degree or lesser included offense was committed).[5]

Echoing the superior court's findings, the State also asserts that even if counsel had been aware of the competency issue, Helo would not have sought a lesser included offense instruction because he was firmly convinced that he acted lawfully in self-defense. Therefore, the State asserts that Helo cannot demonstrate the prejudice necessary to support his claim.

The court's factual findings do not support this conclusion. Pandher testified at the reference hearing that Helo would not agree to plead guilty to second degree assault with no enhancement because he believed he was "innocent of the crime." This testimony does not establish that Helo would have refused to consider a defense that could have given rise to a reasonable doubt about his intent. And the statement in Helo's motion for a new trial asserting that he would not have "approved" of a strategy that "conflicted with or diluted his self-defense claim," was made in the context of the argument that Pandher failed to fully inform Helo about the impact of his failure to testify in support of his defense. There is no reason to assume that Helo would have resisted a strategy of seeking a lesser included

---

[5] This case does not require us resolve the conflict between the standard of prejudice articulated by our supreme court in State v. Grier, 171 Wn.2d 17, 41–41 246 P.3d 1260 (2011), and the one articulated by the United States Ninth Circuit Court of Appeals in Crace v. Herzog, 798 F.3d 840, 849 (9th Cir. 2015), rejecting our Supreme Court's analysis of the Strickland prejudice standard in the context of ineffective assistance of counsel involving lesser included instructions. Both cases are inapplicable because the deficient performance here was not simply a failure to request a lesser included instruction; it was the failure to uncover information that would have informed counsel's strategy and led to further investigation and the development of relevant exculpatory evidence.

offense instruction if counsel had investigated his mental status and advised him that challenging the State's proof of intent was a viable and advisable strategy.

Perhaps more importantly, the State's argument assumes that Helo had to agree, not only with the objective of litigation, but also with the means to pursue it. This is incorrect.

It is a cardinal rule of attorney-client relations that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued." Rules of Professional Conduct (RPC) 1.2(a). In the criminal context, certain decisions must ultimately rest with the defendant after consultation with the lawyer, including what plea to enter, whether to waive a jury trial, whether to testify, and whether to appeal. ABA CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION std. 4–5.2 (4th ed.2015); RPC 1.2(a). "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision." Florida v. Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (internal quotation marks and citation omitted). "The adversary process could not function effectively if every tactical decision required client approval."[6] Taylor v. Illinois, 484 U.S. 400, 418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

---

[6] While the constitutional right to effective assistance of counsel places an outer limit on the attorney's decision-making power, Strickland v. Washington, 466 U.S. 668, 684–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), does not define the Sixth Amendment right to counsel in terms of the defendant's right to control the defense. Stenson, 142 Wn.2d at 733 (decision to admit guilt in penalty phase of capital trial over the objection of the accused fell within the province of counsel to determine matters of strategy); see also State v. Cross, 156 Wn.2d 580, 605–06, 132 P.3d 80 (2006), abrogated by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018) (decision to present

Generally, counsel, not the client, "'is in charge of the choice of trial tactics and the theory of defense.'" In re Pers. Restraint of Stenson, 142 Wn.2d 710, 734, 16 P.3d 1 (2001) (quoting United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir.1987)). And specifically, the decision of whether to include or exclude a lesser included offense rests ultimately with defense counsel. Grier, 171 Wn.2d at 31–32.

Helo pleaded not guilty, so the objective of the representation was to have the jury find him not guilty. Helo's counsel had an obligation to mount a defense consistent with that objective and to consult with Helo. Even if Helo disagreed with the decision to request instructions on diminished capacity or a lesser included offense, defense counsel was not bound to follow Helo's preferred strategy. Counsel would have fulfilled his duty by pursuing a reasoned trial strategy in light of the available evidence, so long as that strategy did not override Helo's choice of plea.

Here, had counsel presented expert testimony related to Helo's capacity and requested instructions on diminished capacity and a lesser included offense, there is a reasonable probability that the jury would have acquitted Helo or convicted him of unlawful display of a weapon instead of second-degree assault. Helo has demonstrated error that undermines our confidence in the verdict.

---

evidence about the accused's mental health at sentencing, over his objection, properly rested with defense counsel).

We grant Helo's personal restraint petition, reverse his conviction, and remand for a new trial.

WE CONCUR: