
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 36024-5-III |
| | ) | |
| JOHN MARK CROWDER, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | |

PENNELL, A.C.J. — John Crowder seeks relief from personal restraint imposed for his 2014 Benton County conviction of first degree rape with a firearm enhancement. On direct review, this court affirmed Mr. Crowder's rape conviction but reversed his two convictions for distribution of controlled substances. In this timely petition, Mr. Crowder asserts that he is unlawfully restrained based on ineffective assistance of trial counsel and prosecutorial misconduct.

## FACTS[1]

Two juvenile males, S.I. and Z.H., met Mr. Crowder while out walking on a July night. Mr. Crowder initially invited the two males to join him in setting off some fireworks. They then attended a nearby bonfire, where they drank vodka shots.

---

[1] The facts are well known to the parties and those pertinent to this petition are primarily taken from this court's decision in Mr. Crowder's direct appeal. *State v. Crowder*, 196 Wn. App. 861, 385 P.3d 275 (2016), *review denied*, 188 Wn.2d 1003 (2017).

Z.H. suggested inviting 14-year-old I.D. to join the group. After exchanging text messages, I.D. agreed to come out. She snuck out of her house through a window and Mr. Crowder picked her up in his Jeep. I.D. had never met Mr. Crowder before.

Back at the bonfire, S.I. fell asleep and Z.H. passed out. I.D. was starting to get tired when Mr. Crowder came up behind her, pulled her head back, and tried to pour vodka down her throat. Angered, I.D. got up and started to head home. As she walked by the Jeep, Mr. Crowder grabbed I.D. and turned her around. I.D. told Mr. Crowder to let her go. He did not. Mr. Crowder removed a gun from his pocket and ordered I.D. to undress and get into the back of his Jeep. He held the gun up against I.D.'s head and pulled back the trigger. At this point, I.D. complied with Mr. Crowder's demands.

Once inside the Jeep, Mr. Crowder raped I.D. The assault lasted approximately an hour. Eventually I.D. was able to get up, clothe herself, and run home. She snuck back in through the window and disclosed the rape several days later. At this point, the police began an investigation.

I.D. identified Mr. Crowder from a live lineup after identifying his residence and his Jeep. Five days after the assault, law enforcement executed a search warrant at Mr. Crowder's house. During the search, police found several firearms, including a revolver. I.D. identified it as the same gun used by Mr. Crowder. The gun was never test fired.

The State charged Mr. Crowder with rape in the first degree with a firearm enhancement and a special allegation that the victim was under the age of 15, or in the alternative, rape of a child in the third degree, as well as with two counts of distribution of a controlled substance to a person under the age of 18.

At trial, Mr. Crowder's counsel attacked I.D.'s credibility on cross-examination by asking why she delayed in reporting the rape and pointing out inconsistencies between her trial testimony and earlier statements, including whether S.I. and/or Z.H. were in Mr. Crowder's Jeep when he picked I.D. up, how much vodka Mr. Crowder poured in I.D.'s mouth, and the respective positions of I.D. and Mr. Crowder during the rape. The defense theory was that although Mr. Crowder was with I.D. and the two boys on the night in question, he never raped I.D.

The jury convicted Mr. Crowder of the offenses against him as charged. He received a sentence of 360 months to life. On appeal, this court affirmed Mr. Crowder's rape conviction in full but reversed his convictions for distribution of controlled substances. The Washington Supreme Court denied petitions for review filed by Mr. Crowder and the State, and the mandate issued on May 10, 2017. An order dismissing the distribution charges was entered by the trial court on July 27, 2017. Mr. Crowder filed this timely personal restraint petition on May 10, 2018.

ANALYSIS

To obtain relief in a personal restraint petition, Mr. Crowder must show actual and substantial prejudice resulting from alleged constitutional errors, or for alleged nonconstitutional errors a fundamental defect that inherently results in a miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). To avoid dismissal, the petition must be supported by competent evidence. *Id*. at 813-14. The petitioner "must present evidence showing that his [or her] factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). If the facts alleged would potentially entitle the petitioner to relief, this Court may order a superior court reference hearing to resolve factual issues. *Id*. at 886-87.

Mr. Crowder claims he is entitled to relief based on ineffective assistance and prosecutorial misconduct.

*Ineffective assistance of trial counsel*

This Court reviews de novo claims of ineffective assistance of counsel, beginning with a strong presumption that trial counsel's performance was adequate and reasonable, and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier,* 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To establish ineffective

4

assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice" under the standard for obtaining collateral relief. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

A petitioner satisfies the first element of ineffective assistance by demonstrating that counsel's conduct fell below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334-335. The second element is met by demonstrating that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the proceeding would have been different. *Rice*, 118 Wn.2d at 889.

Mr. Crowder claims that his attorney failed to interview or present any reputation witnesses despite being told about these potential witnesses, and has submitted declarations from 15 individuals who were willing to testify as to his sexual propriety. He contends that a failure to investigate reputation evidence in a sex offense case constitutes ineffective assistance pursuant to *State v. Lopez*, 190 Wn.2d 104, 113-14, 410 P.3d 1117 (2018). He also claims a reference hearing is necessary to determine whether counsel's decision not to pursue the potential reputation evidence was strategic.

As an initial matter, Mr. Crowder's reliance on *Lopez* is misplaced. In that case, the attorney's entire pretrial investigation and trial performance was "severely handicapped" by his depression. *Id*. at 121-22. Although the attorney's many deficiencies included a failure to investigate and present reputation witnesses, the court's conclusion that the attorney provided ineffective assistance did not turn solely on the failure to pursue reputation testimony, as Mr. Crowder suggests. *Id*. at 121.23.

Moreover, there is no need for a reference hearing to determine whether trial counsel was informed about these witnesses[2] or whether counsel's inaction was strategic,[3] because Mr. Crowder has failed to demonstrate that the evidence was admissible or that it would have likely resulted in a different trial outcome if admitted.

A defendant may introduce evidence of his character if it is pertinent to the crime charged. *State v. Kelly,* 102 Wn.2d 188, 193–95, 685 P.2d 564 (1984); ER 404(a)(1). Sexual morality is considered a pertinent character trait in sexual offense cases. *State v.*

---

[2] Mr. Crowder submitted a declaration from his wife indicating that she told counsel about numerous reputation witnesses, but the declaration does not identify the witness names she actually gave counsel.

[3] The record reveals that Mr. Crowder's attorney offered to forego calling character witnesses to keep the original trial date of September 15, 2014 and to ensure that the case was tried before the CrR 3.3 time for trial period expired. Response to Pers. Restraint Pet., App. C. at 242-43. Moreover, given the nature of the allegations at issue in this case, the potential harm that could have arisen on cross-examination of these witnesses may have outweighed any benefit.

*Woods,* 117 Wn. App. 278, 280, 70 P.3d 976 (2003). Proof of sexual morality may be made through testimony of a character witness who is knowledgeable about the defendant's reputation in the community for sexual morality. *State v. Callahan,* 87 Wn. App. 925, 934, 943 P.2d 676 (1997).

A person seeking to admit reputation testimony must lay a foundation establishing that the witness is familiar with the person's reputation and that his or her testimony is based on the community's perception of that person with respect to the character trait at issue during a relevant time period. *Id.* at 934-35. The reputation evidence must be shown to exist within a neutral and generalized community, and a defendant's reputation among members of his family is generally not admissible. *State v. Binh Thach*, 126 Wn. App. 297, 315, 106 P.3d 782 (2005) ("No case law exists supporting the proposition that a family constitutes a community for purposes of character evidence."); *see also State v. Gregory*, 158 Wn.2d 759, 805, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 768-70, 336 P.3d 1134 (2014). A witness's personal opinion is not competent testimony. *Kelly*, 102 Wn.2d at 194-95. Moreover, the evidence must be based on knowledge obtained during the relevant time frame. *See e.g., Gregory*, 158 Wn.2d at 804-05 (reputation evidence based on knowledge obtained several years earlier was inadmissible).

The 15 supporting declarations submitted by Mr. Crowder are exclusively from his family members: his wife, mother, 2 sisters, brother, 2 daughters, 3 nieces, son-in-law, 2 brothers-in-law, and 2 individuals who identified Mr. Crowder as the "father to my nieces and nephew." Pers. Restraint Pet. at 21, 25. The declarations do not reflect a neutral and generalized community's perception of Mr. Crowder's reputation during the relevant time period but instead offer personal opinions of family members. As an example, the declaration from Mr. Crowder's sister Beth Crowder states in part:

3.      I know many people who know John Crowder. Growing up John and I knew many of [the] same people at school and at church. As adults we live [in] different communities and developed different friendships. I still know a few of his friends and those friendships are very strong, almost like family to him.

4.      I am aware of John Crowder's reputation in the community. I am aware that he has friends in his neighborhood, but spent most of his time with his family.

5.      John Crowder has an excellent reputation for sexual propriety. He and his wife have been married and faithful for 17 years this July.

*Id*. at 14.

The remaining declarations are similarly deficient. Mr. Crowder's family is neither neutral enough nor generalized enough to be classified as a community. Moreover, the declarations fail to explain how the various declarants' contacts "in the community" are sufficient for them to have knowledge of Mr. Crowder's reputation for

8

sexual morality—none of them indicate that the declarants have heard discussions among nonfamily members regarding Mr. Crowder's sexual morality. Instead, they focus on the declarants' own observations and perceptions. The declarations also fail to provide specific timeframes as to the declarants' knowledge. These declarations do not offer reputation evidence, but rather personal opinion evidence from family members that is not admissible pursuant to ER 404(a)(1).

Even if this evidence was admissible, Mr. Crowder has failed to demonstrate a substantial likelihood that this reputation evidence would have changed the verdict. The victim testified at trial that Mr. Crowder, a stranger before the night in question, raped her by putting a gun to her head, ordering her into his Jeep, and having sex with her. The defense theory was that Mr. Crowder was with the victim and her friends on the night in question, but the victim fabricated the rape. Although defense counsel drew attention to the inconsistencies in I.D.'s testimony and her prior statements, the jury still believed I.D. Given this record, Mr. Crowder has failed to demonstrate how this reputation evidence, offered exclusively from his family members, would likely have changed the jury's verdict. Accordingly, Mr. Crowder has failed his burden to establish actual and substantial prejudice resulting from trial counsel's performance.

*Prosecutorial misconduct*

Mr. Crowder's second contention is the prosecutor engaged in misconduct that deprived him of a fair trial. Specifically, he claims the prosecutor's nonverbal actions throughout trial improperly expressed personal opinion of Mr. Crowder's guilt and impugned defense counsel such that Mr. Crowder was denied a fair trial.

The defendant has the burden of proving prosecutorial misconduct by demonstrating (1) the State acted improperly, and (2) the State's improper act resulted in prejudice that had a substantial likelihood of affecting the verdict. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

A defendant who fails to object to the State's improper act at trial waives any error, unless the act was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery,* 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). In making that

10

determination, the courts "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

A prosecutor cannot express a personal opinion as to a defendant's guilt or a witness's credibility, independent of the evidence. *State v. Lindsay*, 180 Wn.2d 423, 437-38, 326 P.3d 125 (2014); *State v. Monday*, 171 Wn.2d 667, 677, 257 P.3d 551 (2011). Similarly, a prosecutor may not impugn defense counsel's integrity by implying wrongful deception or dishonesty on the part of defense counsel. *See e.g., Thorgerson*, 172 Wn.2d at 451-52; *Lindsay*, 180 Wn.2d at 431-34.

Mr. Crowder submitted supporting declarations from his trial counsel, Scott Johnson, and his wife, Hollie Crowder. According to Mr. Johnson, the prosecutor repeatedly made faces and gestures during trial that expressed her disdain for the defense, and which were "obviously designed to communicate to the jury her personal opinion that Mr. Crowder was guilty." Pers. Restraint Pet. at 8. He accuses the prosecutor of pointing at Mr. Crowder, making facial grimaces, rolling her eyes and gasping, and generally engaging in over the top theatrical behavior. *Id.* Similarly, Mrs. Crowder accuses the prosecutor of using theatrical arm movements, gestures, and facial expressions conveying her contempt for Mr. Crowder, and pointing at Mr. Crowder and exclaiming "'that man!'" while describing the victim's allegations. *Id.* at 11.

In response, the State submitted a declaration from Detective Scott Runge, who sat with the prosecutor throughout the trial. He maintains that the prosecutor did not engage in the improper conduct described by Mr. Johnson and Mrs. Crowder. Response to Pers. Restraint Pet., App. F.

Mr. Crowder claims this factual dispute requires a reference hearing, however no hearing is necessary because even assuming the factual allegations regarding the prosecutor's nonverbal conduct are true, Mr. Crowder waived this claim.

Mr. Crowder's trial counsel never objected to the prosecutor's alleged misconduct. Accordingly, any error was waived unless the prosecutor's conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Thorgerson*, 172 Wn.2d at 443.

There are few Washington cases addressing whether a prosecutor's facial gestures or other non-verbal conduct may be so flagrant and ill intentioned that it could not be cured with an instruction. In *State v. Fisher*, the defense claimed the prosecutor "rolled his eyes, winced, shook his head, rubbed his head, put his head in his hands, and also thrust out his hands in disbelief," in an effort to disparage the defense and prejudice the jury. 165 Wn.2d 727, 741-42, 202 P.3d 937 (2009). The trial court ruled that when the gestures were viewed in the context of the entire trial, they were "'not capable of undermining the jury's impartiality or seriously prejudicing any party's case.'" *Id*.

The Supreme Court found that the prosecutor committed misconduct by misusing ER 404(b) evidence, and therefore did not reach the issue of whether the alleged nonverbal conduct constituted reversible misconduct. The concurring opinion stated that the described facial expressions and gestures were clearly improper, but standing alone, would have been unlikely to have affected the jury. *Id.* at 771-72 (Madsen, J., concurring).

Given the lack of case law directly on point, it is instructive to look at prior cases wherein a prosecutor's improper expression of personal opinion or impugning of defense counsel was so flagrant and ill-intentioned as to warrant a reversal. In *In re Personal Restraint of Glassman*, the prosecutor did not make faces or gestures, but during closing argument showed the jury a PowerPoint slide featuring pictures of the defendant that contained added phrases "calculated to influence the jury's assessment of [the defendant's] guilt and veracity," including one that read "GUILTY, GUILTY, GUILTY." 175 Wn.2d 696, 705-06, 286 P.3d 673 (2012) (plurality opinion). The Supreme Court held that the misconduct, which was clearly warned against by case law, was flagrant and ill intentioned. The court also held that the misconduct was so pervasive that it could not have been cured by an instruction, noting that "[h]ighly prejudicial images may sway a jury in ways that words cannot", and that "[p]rejudicial imagery may become all the more problematic when displayed in the closing arguments of a trial." *Id.* at 707-08 (lead

opinion of Madsen, C.J.); *see also id*. at 714-16 (concurring opinion of Chambers, J.).

In *State v. Lindsay*, the prosecutor engaged in multiple instances of misconduct, including calling defense's argument "'a crock,'" telling the jury that the defendant should not lie, and labeling the defendant's testimony as "'the most ridiculous thing I've ever heard.'" 180 Wn.2d at 442-43. The Supreme Court held that even under the more stringent standard for determining prejudice where the defense did not object to the misconduct, the misconduct was flagrant and ill-intentioned, and "was so pervasive that it could not have been cured by an instruction." *Id*. at 443 (quoting *Glassman*, 175 Wn.2d at 707). In reaching that decision, the Court noted that several of the improper comments were made during the state's rebuttal closing, increasing their prejudicial effect. *Id*. at 442-43.

The conduct alleged in this case, as described by Mr. Crowder's supporting affidavits, falls short of that at issue in *Glassman* or *Lindsay*. Unlike those cases, the conduct complained of here was not concentrated during the State's rebuttal closing argument, when it was likely to have an increased prejudicial effect. Defense counsel's failure to move for a curative instruction or a mistrial at the time strongly suggests that the prosecutor's actions did not appear irreparably prejudicial in the context of the trial. *See State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). Trial "[c]ounsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the

claimed misconduct as a life preserver on a motion for new trial or on appeal." *Id.* at 661

(alteration in original) (quoting *Jones v. Hogan*, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)).

This sentiment is especially applicable here, where defense counsel apparently made the

deliberate choice not to object to any of the prosecutor's alleged conduct, as evidenced by

his supporting declaration describing the conduct he observed during trial.

In this case, it is likely that an early curative instruction, given as soon as defense

counsel noticed the theatrical gestures and faces, would have obviated any prejudicial

effect on the jury.[4]

Moreover, when the alleged conduct is viewed in the context of the entire trial, Mr.

Crowder has failed to demonstrate a likelihood that the misconduct substantially affected

the jury's verdict. I.D. testified that Mr. Crowder raped her at gunpoint. S.I. and Z.H. also

testified that Mr. Crowder was with them and I.D. on the night in question. Mr. Crowder's

defense at trial was that he never had any sexual contact with I.D., and that I.D. fabricated

the incident. At the beginning of the trial, the court instructed the jury that the lawyers'

remarks were not evidence and that they should disregard any remarks, statements, or

---

[4] The defense obtained favorable rulings on pretrial motions in limine, prohibiting the prosecutor from expressing or implying a personal opinion as to the defendant's guilt or commenting on the role of defense counsel. Response to Pers. Restraint Petition at 14-15, App. C at 17. Accordingly, if counsel believed the prosecutor was in violation of the in limine rulings, he could have objected.

No. 36024-5-III
*In re Pers. Restraint of Crowder*

arguments not supported by the evidence. Response to Pers. Restraint Pet., App. B at 75. The court repeated this instruction after closing arguments. *Id.* at 535. Jurors are presumed to follow the court's instructions. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

Mr. Crowder has failed to demonstrate actual and substantial prejudice or a material factual dispute requiring a reference hearing. Accordingly, we deny Mr. Crowder's personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

16